IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-02276-WYD

DEBRA WILLIAMS a/k/a MARGARET MCCARTHY,

      Applicant,

v.

ARI ZAVARAS, Executive Director of CDOC, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO JOHN SUTHERS,

      Respondents.

---

## ORDER DENYING 28 U.S.C. § 2254 APPLICATION

---

      Applicant, Debra Williams, also known as Margaret McCarthy, is a prisoner in the custody of the Colorado Department of Corrections (DOC) who currently is incarcerated at the Denver Women's Correctional Facility.  She initiated this action by filing *pro se* an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of her conviction in Denver District Court case number 00CR2464.  Ms. Williams has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

      On November 27, 2007, I directed the respondents to file an answer to the 28 U.S.C. § 2254 application.  On January 25, 2008, after being granted an extension of time, the respondents filed an answer.  On February 6, 2008, Ms. Williams filed a traverse.  On May 26, 2009, I ordered the respondents to file the state court record, which was filed on June 15, 2009.  On August 26, 2009, I ordered the respondents to supplement and clarify the state court record.  On August 28, 2009, the Denver District Court supplemented the record.  On September 2, 2009, the respondents filed a

response to the August 26 order to supplement and clarify.

In the response, the respondents note that two different volumes of the state court record are designated as "volume 2":  the volume 2, pages 1 through 248, that is the record of state court proceedings, and the volume 2, pages 1 through 8, that is a transcript of the proceedings commenced on Friday, September 7, 2001, in the Denver District Court.  Because I cite to both volumes in this order, the citations to the volume 2 that is the record of state court proceedings will not contain a date and the citations to the volume 2 that is a transcript of the Denver District Court proceedings commenced on September 7, 2001, will include the date "Sept. 7, 2001."  Citations to both volumes 2 occur in the below section titled "I.  Factual and Procedural Background" and in the discussion of claim 2 contained in the section titled "III.  Merits of the Claims."

I must construe liberally Ms. Williams' filings because she is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  After reviewing the entire file, I find that an evidentiary hearing is not necessary.  For the reasons stated below, the 28 U.S.C. § 2254 application will be denied.

I.  Factual and Procedural Background

While Ms. Williams was serving a prison sentence at the Albion Correctional Facility in New York, an indictment issued in Colorado, charging her with conspiracy, computer crime, theft, forgery, and violating the Colorado Organized Crime Control Act. In June 2001, she requested disposition of the Colorado charges pursuant to the Interstate Agreement on Detainers (IAD), and was transferred to Colorado.  She was

convicted by a jury in Denver District Court Case No. 00CR2464 of computer crime, violation of the Colorado Organized Crime Control Act, five counts of theft, and seven counts of forgery.  The judgment of conviction was entered on July 10, 2002.  *See* trial tr. vol. 1, 185-87.  She was sentenced to twenty-four years of imprisonment in the DOC and ordered to pay $50,428.80 in restitution.  *Id.* at 186.

Ms. Williams appealed her convictions directly to the Colorado Court of Appeals, which on April 29, 2004, affirmed her convictions.  *See People v. McCarthy*, No. 02CA1659 (Colo. Ct. App. Apr. 29, 2004) (not published) (answer, ex. D); *see also* trial tr. vol. 2, 294-301.  On February 22, 2005, the Colorado Supreme Court denied certiorari review.

On March 29, 2005, Ms. Williams filed *pro se* a motion, *see* trial tr. vol. 2, 249-55 ("Motion to Dismiss Criminal Conviction Pursuant to Rule 35(c)"), Mar. 29, 2005, which the trial court denied on May 11, 2005.  *See* trial tr. vol. 2, 342-45, May 11, 2005.  Ms. Williams appealed the denial of her postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure to the Colorado Court of Appeals, which on April 12, 2007, affirmed the trial court order.  *See People v. McCarthy*, No. 05CA1498 (Colo. Ct. App. Apr. 12, 2007) (answer, ex. K).  On August 13, 2007, the Colorado Supreme Court denied certiorari review.

On October 22, 2007, Ms. Williams tendered the instant habeas corpus application to this court, which filed the application on October 26, 2007.  She asserts four claims:

> 1.      that the grand jury was unconstitutionally selected and impaneled in violation of the cross-section requirement, due process, and equal protection;

3

2.      that her speedy trial rights and the provisions set forth in the IAD were violated;

3.      that trial counsel was ineffective; and

4.      that appellate counsel was ineffective.

Respondents concede that the instant action was filed in a timely manner i.e., within the one-year limitation period in 28 U.S.C. § 2244(d), and that Ms. Williams has exhausted state remedies as to each claim, raising the first two claims on direct appeal and the third and fourth claims in her Colo. R. Crim. P. 35(c) postconviction motion. Therefore, I need not address further the one-year limitation period or exhaustion of state remedies.

## II.  Standard of Review on the Merits

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Ms. Williams seeks to apply a rule of law that was clearly established by the Supreme Court at the time her

4

conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly

established federal law "refers to the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at

412.  Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*.  Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry

pursuant to 28 U.S.C. § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of

federal law is implicated, I must determine whether the state court's decision was

contrary to or an unreasonable application of that clearly established rule of federal

law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if:  (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme
> Court cases"; or (b) "the state court confronts a set of facts
> that are materially indistinguishable from a decision of the
> Supreme Court and nevertheless arrives at a result different
> from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,]
> 669 [(10th Cir. 2006)] (internal quotation marks and
> brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The
> word 'contrary' is commonly understood to mean
> 'diametrically different,' 'opposite in character or nature,' or
> 'mutually opposed.'"  *Williams*, 529 U.S. at 405 (citation
> omitted).

> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts.  *Id.* at

5

> 407-08.  Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective

inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law."  *Maynard*,

468 F.3d at 671.  "[O]nly the most serious misapplications of Supreme Court precedent

will be a basis for relief under [28 U.S.C.] § 2254."  *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2)

allows me to grant a writ of habeas corpus only if the state court decision was based

on an unreasonable determination of the facts in light of the evidence presented.

Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations

are correct and Ms. Williams bears the burden of rebutting the presumption by clear

and convincing evidence.  "The standard is demanding but not insatiable . . . [because]

'[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231,

240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

I "owe deference to the state court's result, even if its reasoning is not expressly

6

stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must

uphold the state court's summary decision unless [my] independent review of the

record and pertinent federal law persuades [me] that its result contravenes or

unreasonably applies clearly established federal law, or is based on an unreasonable

determination of the facts in light of the evidence presented." *Id.* at 1178.  "[T]his

'independent review' should be distinguished from a full de novo review of the

petitioner's claims." *Id.*

Finally, if the state court does not address a claim on the merits, I must review

the claim *de novo* and the deferential standards in 28 U.S.C. § 2254(d) are not

applicable.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

III.   Merits of the Claims

Claim One

As her first claim that the grand jury was unconstitutionally selected and

impaneled, raised on direct appeal in the state courts, Ms. Williams alleges that the

manner in which prospective grand jurors are selected in Colorado makes it impossible

to determine whether discrimination occurred in the grand jury selection process.

Some background is in order.  On March 14, 2002, Ms. Williams filed a motion

requesting disclosure of the ethnic composition of the grand jury that returned the

indictment in her case.  *See* trial tr. vol. 1, 101-02 ("Motion for Additional Discovery"),

Mar. 14, 2002.  On March 21, 2002, the prosecution filed a response, which explained

that:

>             Such information does not exist in the files of the
> District Attorney.  The pool from which those grand jurors
> were selected was chosen at random by the Jury

7

> Commissioner.  The ethnicity of these randomly selected
> jurors is not recorded on any questionnaire or form
> generated by the jury commissioner.  Likewise, the ethnicity
> of the jurors selected to serve is not recorded in any
> manner by the District Attorney or the Court that presided
> over the selection process.

*See* answer at 9; trial tr. vol. 1, 105 ("People's Response to Defendants [sic] Motion for

Additional Discovery), Mar. 21, 2002.

On April 4, 2002, the trial court issued a written order.  *See* trial tr. vol. 1, 107,

Apr. 4, 2002.  The trial court "accept[ed] the representations of the District Attorney that

the ethnicity of the actual grand jurors is not recorded."  *Id.*  Nonetheless, the trial court

instructed the district attorney to provide Ms. Williams with the ethnic composition of

the grand jury based upon "the collective memory of the DA[]s who appeared before

the grand jury."  *Id.*

The prosecuting attorney then filed a list of the grand jurors based upon a

review of its record of the names of the grand jurors and memory of citizens comprising

the relevant panel.  *See* trial tr. vol. 1, 110 ("People's Response to Order Regarding

Additonal [sic] Discovery"), [no date indicated].  The list explained that the jury

consisted of one African American male, who served as foreperson; two Hispanic

females; five Anglo females; and four Anglo males.  *Id.*

On April 16, 2002, Ms. Williams made an oral motion to quash the indictment on

the grounds that the prosecutor's recollection of the grand jury's composition was

"insufficient for us to be able to evaluate whether or not a challenge to the Grand Jury

can be sustained."  *See* trial tr. vol. 15, 6, Apr. 16, 2002.  Ms. Williams argued that she

was deprived of her opportunity to challenge the impaneling of the grand jury because

"the selection process is such that it does not allow us to look at the ethnic composition of the Grand Jury."  *See* trial tr. vol. 15, 8.

Relying on *People v. Cerrone*, 854 P.2d 178 (Colo. 1993) (en banc), which cites to *Batson v. Kentucky*, 476 U.S. 79 (1986), the prosecutor argued that Ms. Williams failed to establish a *prima facie* case of purposeful discrimination in the selection of the grand jury.  *See* trial tr. vol. 15, 7-8.  The prosecutor specifically argued that "[t]here is no evidence, no statement from [the attorney] that we somehow manipulated that procedure to stack the jury somehow or to under represent members of any cognizable racial group."  *See* trial tr. vol. 15, 8.  The trial court denied the motion.

The constitutional guarantee of equal protection precludes a state from discriminating on the basis of race during jury selection.  *Batson*, 476 U.S. at 85-86. The principals prohibiting the exclusion of individuals from a jury based on their race "are essentially the same for grand juries and for petit juries."  *Id.* at 84 n.3 (citations and internal quotation marks omitted).

Although for a state to exclude prospective jurors on account of race clearly violates the Equal Protection Clause, state action that results in a discriminatory impact does not by itself violate the Equal Protection Clause unless the state acted with a discriminatory purpose.  *Hernandez v. New York*, 500 U.S. 352, 358-60 (1991).  An individual alleging purposeful discrimination "carries the ultimate burden of persuasion" for proving the existence of such discrimination.  *Batson*, 476 U.S. at 94 n.18.

*Batson* established a three-part process for evaluating claims of racial discrimination in jury selection under the Equal Protection Clause.  *Id.* at 96-98, *see also Hernandez*, 500 U.S. at 358-59.  First, a defendant is required to make a *prima*

9

*facie* showing that the state has excluded potential jurors on account of race. *Batson*, 476 U.S. at 96-97. A defendant may establish a *prima facie* case by showing that the venire in question was selected under a practice providing the opportunity for discrimination, the excluded persons were members of a cognizable racial group, and members of that group were substantially under represented on the jury. *Id.* at 95.

In determining whether a defendant has made a *prima facie* showing of purposeful discrimination, the trial court must determine whether "the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id.* at 93-94. The trial court should consider all relevant circumstances. *Id.* at 96-97.

Second, if the requisite showing has been made, the burden shifts to the state to articulate a race-neutral explanation for excluding the jurors in question. *Id.* at 97-98. Third, if the state succeeds in articulating a race-neutral explanation, then the trial court must determine whether the defendant has carried his or her burden of proving purposeful discrimination. *Id.* at 98.

In addressing Ms. Williams' discrimination claim, the Colorado Court of Appeals, while not specifically citing to *Batson*, applied *Batson* principles to reject the claim, reasoning that Ms. Williams failed to establish a *prima facie* case of purposeful racial discrimination in the selection of the grand jury panel:

> [D]efendant had the initial burden to demonstrate that members of a cognizable racial group were substantially underrepresented on the venire. However, defendant's discovery motion only sought information concerning the racial background of the persons who actually served as grand jurors.
>
> In People v. Cerrone, [854 P.2d 178 (Colo. 1993)], the defendant established a prima facie case of

discrimination by showing that Spanish-surnamed individuals were substantially underrepresented on the venire panel.  We recognize that, due to the fact that [Colo. Rev. Stat.] § 13-71-115 does not require a prospective grand juror to state his or her race, it is more difficult for a defendant to challenge the racial composition of the grand jury venire where the claim of discrimination is not based on the surnames of the prospective jurors.  Nevertheless, in this case defendant cannot complain about the difficulty of such an investigation because she did not even request the names and addresses of the prospective grand jurors, a necessary first step to any inquiry into the racial composition of the grand jury venire.

Accordingly, based on this record, we conclude defendant did not establish a prima facie showing of purposeful discrimination.

*McCarthy*, No. 02CA1659, slip op. at 6-7 (answer, ex. D); trial tr. vol. 2, 300-01.

The Colorado Court of Appeals' determination that Ms. Williams failed to establish a *prima facie* case of purposeful racial discrimination in the selection of the grand jury panel did not result in a decision that was contrary to, or involved an unreasonable application of, *Batson*.

Claim Two

As her second claim, also raised on direct appeal, Ms. Williams asserts that the trial court incorrectly determined when her speedy trial period began under the IAD. Again, some background is in order.

Ms. Williams was indicted in July 2000, and a warrant issued for her arrest.  *See* answer at 14; trial tr. vol. 2, 295 (02CA1659).  On February 22, 2001, the state of New York, which had Ms. Williams in custody pursuant to unrelated charges, acknowledged receipt of a Colorado extradition detainer lodged against her.  *Id.*  On February 26, 2001, Ms. Williams sent a letter to the Colorado Office of State Court Administrator

11

disputing the validity of the warrant issued.  The letter failed to mention the IAD, or

otherwise imply that she wished to exercise her speedy trial rights.  *Id.*

On or about April 19, 2001, Ms. Williams sent a letter to the Albion Correctional

Facility in New York, which stated:

> In regards to the Fugitive of Justice Warrant lodged
> against me from Denver, Colorado.  On my crimanal [sic]
> record it states I have a failure to appear/fugitive of Justice
> warrant.  This is inaccurate, ineligible, and an infringement
> on my rights based on Interstate Agreement on Detainers
> (see enclosed).  I entered my term of imprisonment on
> February 14, [20]01 for New York state.  If trial is not had on
> any untried indictment, information or complaint by August
> 14, [20]01.  180 days.  This detainer shall not be of any
> further force or effect .

*See* answer at 14-15; trial tr. vol. 2, 260.

Subsequently, on May 21, 2001, Ms. Williams sent a note to Inmate Records at

the Albion Correctional Facility asking the following:

> Did you receive my paperwork I sent to you on
> 04/20/01 Re: A Denver Colorado detainer?  It was a copy of
> Habeas Corpus and the letter your office sent me regarding
> the detainer.  I need this paperwork back please and any
> information you have regarding the matter.  I'm trying to get
> this cleared up because I never committed a crime nor have
> I ever been arrested in Denver, CO.

*See* answer at 15; trial tr. vol. 2, 267.

On May 30, 2001, Ms. Williams sent a letter to Chief Justice Mary J. Mullarkey

of the Colorado Supreme Court, in which she reiterated that the "failure to appear

warrant out of Denver, CO [was] inaccurate, ineligible, and an infringement on [her]

rights based on Interstate Agreement on Detainers."  *See* answer at 15; trial tr. vol. 2,

273.

12

On June 22, 2001, Ms. Williams was sent a "Notice of Untried Indictment, Information, or Complaint and Right to Request Disposition" informing her of the outstanding warrant and charges pending against her. *See* answer at 15; trial tr. vol. 1, 34-35. On June 28, 2001, she requested disposition of the Colorado charges pursuant to the IAD. *See* answer at 15; trial tr. vol. 1, 36-67. Ms. Williams was transferred from New York to the Denver Sheriffs' Department in late August 2001. *See* answer at 15-16; trial tr. vol. 1, 25.

On September 7, 2001, Ms. Williams, represented by a public defender, pleaded not guilty. *See* answer at 16; trial tr. vol. 2, 5-6, Sept. 7, 2001. The prosecutor pointed out that she had filed a motion for speedy detainer and that trial must be set before December 28, 2001, to fall within the IAD speedy trial period. *See* answer at 16; trial tr. vol. 2, 5, Sept. 7, 2001. Trial was set for November 5, 2001. *See* answer at 16; trial tr. vol. 2, 6, Sept. 7, 2001. Approximately, one month before trial, the Public Defender's Office moved to withdraw from Ms. Williams' cases based upon a conflict of interest. The trial court appointed alternate defense counsel. *See* answer at 16; trial tr. vol. 2, 296 (No. 02CA1659).

On October 4, 2001, Ms. Williams filed a motion to dismiss, arguing that the state had failed to comply with the IAD because it had failed to try her within the requisite 180-day speedy trial period of the IAD. *See* answer at 16; trial tr. vol. 1, 25-28. In her motion, Ms. Williams claimed that the letter she submitted to the Colorado Office of the State Court Administrator on February 26, 2001, triggered the speedy disposition provisions in the IAD. The motion did not reference the April 19, May 21, or May 30, 2001, correspondence.

The trial court denied the motion, finding that Ms. Williams' February 26, 2001, letter did not comply with the provisions of the IAD and that the six-month speedy trial period was not triggered until June 28, 2001, when she requested disposition of the Colorado charges. *See* answer at 16; trial tr. vol. 2, 296 (No. 02CA1659); *see also* trial tr. vol. 5, 25, Oct. 19, 2001.

On November 5, 2001, defense counsel informed the trial court that both he and the prosecuting attorney were involved in a separate trial that had not yet finished. *See* answer at 17; trial tr. vol. 6, 2, Nov. 5, 2001. He requested a continuance "within speedy trial pursuant to the Court's ruling that speedy trial expires December 28, 2001." *See* answer at 17; trial tr. vol. 6, 2. The trial court held that Ms. Williams' request for a continuance waived her right to a speedy trial, but that the court nevertheless would accommodate defense counsel's request to have the trial reset within the same speedy trial period. *See* answer at 17; trial tr. vol. 6, 3. Trial was rescheduled for November 26, 2001. *See* answer at 17; trial tr. vol. 6, 3-4.

On November 8, 2001, defense counsel requested that the trial be moved to December based upon conflicts with his schedule. *See* answer at 17; trial tr. vol. 8, 2-3, Nov. 8, 2001. The trial court informed defense counsel that the docket was full for December, and observed that defense counsel appeared to argue a need to reschedule in order to be effective as counsel. *See* answer at 17; trial tr. vol. 8, 3-4. Ms. Williams personally addressed the court, objected to the continuance, and insisted that her trial be set within the original six-month period. *See* answer at 17; trial tr. vol. 8, 7-8.

The trial court noted that defense counsel was appointed to Ms. Williams' case

14

approximately one month prior to trial and that the case involved complicated legal issues.  *See* answer at 17; trial tr. vol. 8, 8.  The court acknowledged that a continuance would be necessary to ensure that Ms. Williams received effective assistance of counsel.  *See* answer at 17; trial tr. vol. 8, 9.  After finding a waiver of Ms. Williams' right to a speedy trial, the court concluded that there was good cause for continuing the trial, and reset the trial to January 22, 2002.  *See* answer at 17-18; trial tr. vol. 8, 9.

On January 18, 2002, defense counsel moved for another continuance, again citing the need for pretrial preparation.  *See* answer at 18; trial tr. vol. 11, 2-4, Jan. 18, 2002.  The trial court found that a continuance was required in order to guarantee Ms. Williams the effective assistance of counsel.  *See* answer at 18; trial tr. vol. 11, 15. The court informed Ms. Williams of her right to proceed *pro se*, and she declined.  *See* answer at 18; trial tr. vol. 11, 16.  Trial was set for April 15, 2002.  *See* answer at 18; trial tr. vol. 11, 20.   Trial actually commenced on April 16, 2002.  *See* trial tr. vol. 15, 1, Apr. 16, 2002.  On April 19, 2002, Ms. Williams was convicted by a jury on charges of conspiracy, computer crime, theft, forgery, and violating the Colorado Organized Crime Control Act.

On direct appeal, Ms. Williams argued that her February 26, 2001, letter to the state court administrator triggered the speedy trial disposition provisions in the IAD. The Colorado Court of Appeals ruled that the February 26, 2001, letter did not "strictly comply" with the notification provisions of the IAD, because it "was not directed to the prosecution, and it did not contain a request for speedy disposition of the charges." *McCarthy*, No. 02CA1659, slip op. at 3 (answer, ex. D); *see also* trial tr. vol. 2, 297.

15

The state appeals court agreed with the trial court's determination that the six-month

speedy trial period under the IAD was not triggered until June 28, 2001, when Ms.

Williams requested disposition of the Colorado charges.  *See McCarthy*, No.

02CA1659, slip op. at 3-4; *see also* trial tr. vol. 2, 297-98.

The IAD is a federal law and interstate compact.  *See Reed v. Farley*, 512 U.S.

339, 341 (1994).  It provides, in relevant part:

> [W]henever during the continuance of the term of
> imprisonment there is pending in any other party State any
> untried indictment, information, or complaint on the basis of
> which a detainer has been lodged against the prisoner, he
> shall be brought to trial within one hundred and eighty days
> after he shall have caused to be delivered to the
> prosecuting officer and the appropriate court of the
> prosecuting officer's jurisdiction written notice of the place of
> his imprisonment and his request for a final disposition to be
> made of the indictment, information, or complaint.

18 U.S.C. App. 2 § 2, art. III(a); also codified at Colo. Rev. Stat. § 24-60-501, art. III(a).

The 180-day time period under the IAD for bringing a prisoner to trial on out-of-

state charges does not commence until the prisoner's disposition request actually has

been delivered to the court and prosecutor of the jurisdiction that lodged the detainer

against him or her.  *Fex v. Michigan*, 507 U.S. 43, 52 (1993).  The state appeals court's

determination that the six-month speedy trial period under the IAD was not triggered

until June 28, 2001, when Ms. Williams requested disposition of the Colorado charges,

did not result in a decision that was contrary to, or involved an unreasonable

application of, federal law.

Claim Three

In her Colo. R. Crim. P. 35(c) motion, Ms. Williams argued that she was denied

16

the effective assistance of trial counsel because her attorney (1) failed to research federal law that requires race to be recorded on jury questionnaires to ensure that grand juries are drawn from a fair cross section of the community; (2) failed to obtain supporting documents from custodial officials to prove she was in strict compliance with the IAD; and (3) failed to retain a handwriting expert.

The factual basis for Ms. Williams' first and second ineffective-assistance-of-counsel claims is discussed in detail in claims one and two above.  Ms. Williams bases her third claim of ineffective assistance of counsel on her complaint that trial counsel failed to retain a handwriting expert for trial, when his requests for continuances were based upon the representation that he could not be prepared for trial without retaining one.

The Supreme Court has established a two-prong test to review claims of ineffective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984). Ms. Williams must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance was prejudicial. *See id.* at 687-88.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.*  at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is the defendant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*

In order to demonstrate prejudice, Ms. Williams must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *See id.* at 694.

17

If Ms. Williams fails to satisfy either prong of the two-part *Strickland* test, the ineffective-assistance-of-counsel claim must be dismissed. *See id.* at 697. Finally, ineffective-assistance-of-counsel claims are mixed questions of law and fact. *See id.* at 698.

Ms. Williams contends that her trial counsel was ineffective because he only requested the racial makeup of the grand jury panel, and not the racial makeup and the names and addresses of the venire. Therefore, she complains, it was not possible to determine whether the selection process was proper. She does not contend that, but for counsel's failure, the discovery would have revealed an improper selection process. As a result, the Colorado Court of Appeals found that, because there was no affirmative allegation of prejudice, Ms. Williams did not satisfy the prejudice prong of Strickland. *See McCarthy*, No. 05CA1498 (answer, ex. K), at 6-7. The state court's determination that Ms. Williams failed to establish prejudice did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

Ms. Williams also argues that the additional correspondence she sent after her February 2001 letter to the state court administrator triggered the 180-day speedy trial period under the IAD. She contends her trial attorney was ineffective for failing to bring this information to the attention of the court because it would have established that she was in strict compliance with the IAD.

However, as discussed above, Ms. Williams' letters sent prior to her June 28, 2001, speedy trial request did not comply with the requirements of the IAD. While the letters mentioned the IAD, they were not addressed or sent to the appropriate parties. The focus of the letters was Ms. Williams' claim that the outstanding warrant was a

mistake.  Therefore, Ms. Williams failed to make a proper request for disposition of the untried charges pursuant to the IAD and her correspondence was insufficient to trigger the IAD's speedy disposition provisions.  Defense counsel could not have been ineffective for failing to include the letters in the paperwork he brought to the attention of the trial court, particularly since the results of the  proceeding would not have changed.  Therefore, the Colorado Court of Appeals'  conclusion that Ms. Williams failed to establish prejudice under *Strickland*, "which alone is fatal to her claim," *see McCarthy*, No. 05CA1498 (answer, ex. K) at 5, did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

Likewise, although Ms. Williams objected to her attorney's requests for continuances, the state appeals court found that those requests were granted by the trial court based upon good cause under the extension provision of the IAD.  *See* 18 U.S.C. App. 2 § 2, art. III(a) ("for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance "); *see also McCarthy*, No. 92CA1659 (answer, ex. D) at 4;  *McCarthy*, No. 05CA1498 (answer, ex. K) at 4.  The Colorado Court of Appeals held that Ms. Williams had no cognizable claim for having been denied a speedy trial under the IAD, and, therefore, her attorney could not have been ineffective for failing to argue that those rights were infringed.  *McCarthy*, No. 05CA1498 (answer, ex. K) at 4.  I find that the Colorado Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

Lastly, Ms. Williams claims that her trial attorney was ineffective for failing to retain a handwriting expert for trial, when his requests for continuances were based

upon the representation that he could not be prepared for trial without retaining one.

Her case eventually proceeded to trial without a handwriting expert.  On appeal, Ms.

Williams did not allege that a handwriting expert would have assisted in her defense.

Rather, she complained that, while the continuances were granted, in part, on the

representation that a handwriting expert would have assisted in her defense, the

defense never called such an expert.  The Colorado Court of Appeals found that a

handwriting expert was retained but counsel elected not to call that expert, and that

Ms. Williams failed to demonstrate that her attorney's decision not to call the expert

was based upon anything other than trial strategy.  *McCarthy*, No. 05CA1498 (answer,

ex. K) at 7.  I find that the Colorado Court of Appeals' conclusion that Ms. Williams' trial

counsel did not provide ineffective assistance by his tactical decision not to call an

expert witness did not result in a decision that was contrary to, or involved an

unreasonable application of, *Strickland*.

### Claim Four

As her fourth and final claim, Ms. Williams alleges that appellate counsel was

ineffective for the same reasons that trial counsel was ineffective.  Claims of ineffective

assistance of appellate counsel are to be evaluated like other ineffective-assistance-of-

counsel claims under the performance and prejudice prongs of *Strickland*.  *Malicoat v.*

*Mullin*, 426 F.3d 1241, 1248 (10th Cir. 2005).  "[A]ppellate counsel who files a merits

brief need not (and should not) raise every nonfrivolous claim, but rather may select

from among them in order to maximize the likelihood of success on appeal."  *Smith v.*

*Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)); *see*

*also Malicoat*, 426 F.3d at 1249.  In determining whether counsel's performance was

deficient for omitting an issue on appeal, "the court must consider the merits of the omitted issue." *Malicoat*, 426 F.3d at 1249 (citing *Smith*, 528 U.S. at 288); *see also Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).  With regard to the prejudice prong of the *Strickland* standard, "[h]abeas relief is warranted only if the petitioner establishes a reasonable probability of a favorable result had his appellate counsel raised the omitted issue." *Malicoat*, 426 F.3d at 1249.

The Colorado Court of Appeals found that Ms. Williams failed to establish that her appellate counsel was ineffective for failing to raise the same issues the appeals court already had determined were insufficient to support her ineffective-assistance-of-counsel claims.  *See McCarthy*, No. 95CA1498 (answer, ex. K) at 3.  The Colorado Court of Appeals' disposition of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

## IV.  Conclusion

For the reasons stated above, habeas corpus relief will be denied.  Accordingly, it is

ORDERED that the habeas corpus application is denied and the action is **DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that each party shall bear his or her own costs and attorney's fees.

Dated:  October 15, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge